| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>-------------------------------------------------------X | FOR PUBLICATION |
| In re:<br><br>LIDDA BETH SNEIJDER,<br><br>                      Debtor.<br><br>-------------------------------------------------------X | Chapter 13<br><br>Case No. 08-13627 (MG) |

**MEMORANDUM OPINION & ORDER DENYING DEBTOR'S
OBJECTION TO CLAIM #7**

*A P P E A R A N C E S:*

MICHAEL H. SCHWARTZ & ASSOCIATES, P.C.
*Attorney for the Debtor*
One Water Street
White Plains, NY 10601
(914) 997-0071
By:   Michael Schwartz, Esq.

JEFFREY SAPIR, ESQ.
*Standing Chapter 13 Trustee*
399 Knollwood Road
Suite 102
White Plains, NY 10603
(914) 328-6333
By:   Jody Kava, Esq.


**MARTIN GLENN
United States Bankruptcy Judge**

       This case presents a frequently recurring question in chapter 13 cases—namely, how should the Court address a secured mortgage claim when the debtor intends to surrender the collateral under a proposed plan pursuant to Bankruptcy Code § 1325(a)(5)(C)? The case poses both legal and practical issues. The legal issue raised by the debtor, Lidda Beth Sneijder ("Debtor"), is whether § 1325(a)(5)(C) permits a debtor

1

to surrender collateral in full satisfaction of the loan. The answer, pursuant to Bankruptcy Code § 506(a) and the prevailing case law, is undoubtedly no. Even if the Debtor intends to surrender collateral as part of her plan, the secured creditor would be entitled to an unsecured deficiency claim if the collateral is worth less than the secured creditor's allowed secured claim. The amount of the unsecured deficiency claim ordinarily is fixed when the collateral is sold at a foreclosure sale, but that may not occur for many months after a plan is confirmed and the property is surrendered, substantially complicating the chapter 13 trustee's ability to calculate and begin paying unsecured creditors' claims.

This leads to practical problems. When the debtor intends to surrender property, when or how does a secured creditor obtain an unsecured deficiency claim? Here, the secured creditor only filed a secured claim. The bar date has passed. The Debtor filed an objection seeking to expunge the claim, without acknowledging that the secured creditor may be entitled to an unsecured deficiency claim. There are different approaches available to resolve issues about the unsecured deficiency: (i) the debtor, secured creditor and the chapter 13 trustee can agree before confirmation on the amount of the unsecured deficiency claim (the preferred approach); (ii) a debtor or the chapter 13 trustee may object to a claim creating a contested matter under FED. R. BANKR. P. 9014, requiring a court to value the collateral under FED. R. BANKR. P. 3012 and § 506(a), and thereby determine the amount of the unsecured deficiency claim; (iii) any party in interest can file a motion requesting the court to value the collateral under FED. R. BANKR. P. 3012 and § 506(a); (iv) any party in interest may file a motion requesting the court to estimate the unsecured deficiency claim pursuant to § 502(c) if otherwise fixing or liquidating the

claim would unduly delay the administration of the case; or (v) the secured creditor may amend (or seek leave to amend if the bar date has passed) the existing secured claim to a partially secured and partially unsecured claim, with the amount of the unsecured deficiency claim fixed through a foreclosure sale, a § 506(a) valuation hearing, or an estimation proceeding under § 502(c)(1).[1]  But, more importantly, if the debtor's plan must be a 100% plan (as in cases such as this one where the Debtor is seeking to preserve equity in another property), it may not be possible to determine feasibility of the proposed plan until the unsecured deficiency claim is fixed.[2]  Therefore, a debtor may find herself in a Catch-22—unable to confirm a plan absent fixing the deficiency claim, but potentially unable to fix the deficiency claim until after foreclosure following confirmation and surrender of the property.

In this case the Debtor filed a motion to expunge the secured claim of the second mortgagee of property the Debtor proposes to surrender pursuant to § 1325(a)(5)(C). Debtor's proposed chapter 13 plan does not provide for any unsecured deficiency claim. For the reasons explained below, Debtor's motion to expunge claim #7 is denied, subject to the following.  Within 30 days from the date of this Order, the parties should seek to agree on the amount of any deficiency claim; if the parties agree, the secured creditor may file an amended claim for the agreed amount of the unsecured deficiency within the

---

[1] Where a debtor anticipates surrendering property under § 1325(a)(5)(C), and needs to have an unsecured deficiency claim fixed before feasibility of the plan can be determined, the debtor can file the unsecured deficiency claim on behalf of the secured creditor.  Pursuant to FED. R. BANKR. P. 3004, "[i]f a creditor does not timely file a proof of claim under Rule 3002(c) . . . , the debtor or trustee may file a proof of claim within 30 days after the expiration of the time for filing claims prescribed by Rule 3002(c) . . . ." The bar date in this case was January 28, 2009, so neither the debtor nor trustee can file a new unsecured deficiency claim at this late date.  As explained below, even after the bar date, the creditor can seek leave to file an amended claim that includes the unsecured deficiency claim.

[2] For a chapter 13 plan to be confirmable, unsecured creditors must receive more than they would in a chapter 7 liquidation.  11 U.S.C. § 1325(a)(4).  Therefore, if a debtor intends to maintain equity in property, unsecured creditors must receive 100% of their allowed claims.

3

30 day period. If the parties are unable to agree, they should notify the Court and appear at the regularly scheduled chapter 13 hearing on August 6, 2009, for the Court to determine the procedures for resolving the dispute prior to the confirmation hearing.

## BACKGROUND

The Debtor filed her chapter 13 petition on September 19, 2008. The claims bar date was January 28, 2009. At the time of the filing, the Debtor owned two parcels of property—her primary residence at 445 Howe Avenue, Bronx, New York that she hopes to keep, and another property at 10 Homer Drive, Brewster, New York that she proposes to surrender. The Homer Drive property is secured by two mortgages. Countrywide Home Loans ("Countrywide") owned the senior mortgage, in the amount of $270,874.82, including prepetition arrears, as of the petition date (claim #2). The second mortgage was apparently originated by Countrywide but was assigned to UMLI/HomeVest Capital, LLC ("UMLI"), in the amount of $99,010.10 as of the petition date (claim #7).[3] The property was also encumbered by a judgment lien in favor of Executive Adjustment Bureau in the amount of $9,771. While the Debtor's Schedule A lists the value of the Homer Drive property as $350,000, what the property is actually worth today in the

---

[3] The Debtor's Schedule A lists the Homer Drive property, but shows the secured creditor as Bank of New York. The Schedules also show that Bank of New York had commenced a prepetition foreclosure action relating to this mortgage. UMLI's proof of claim #7 attaches the original note and second mortgage in favor of Countrywide and a recorded assignment in blank (not identifying the name of the assignee). Debtor's motion to expunge claim #7 does not challenge UMLI's standing or ownership of the note and mortgage. UMLI's standing as a secured creditor may, however, be subject to challenge. Under New York law, an assignment of a real property mortgage requires that the assignee be named; assignments in blank are void. *See Hurlburt v. Walker*, 258 N.Y. 8, 15 (1931) ("This principle of [the validity of assignments in blank] does not apply to instruments, other than those which are negotiable, or quasi negotiable by custom."); *Levy v. Louvre Realty*, 222 N.Y. 14, 19−20 (1917) (holding that an assignment in blank is void, because "[t]he sharply defined presumption which protects the holder of commercial paper when issued with blanks, and protects also the holder of other documents quasi negotiable by custom, may be assumed inapplicable [to mortgage assignments]") (Cardozo, J.). The denial of Debtor's motion to expunge claim #7 is without prejudice to a new motion to expunge the claim if UMLI lacks standing. UMLI will have the burden of demonstrating that it held a valid assignment when it filed its claim.

4

current depressed market is anybody's guess. The Homer Drive property is clearly underwater—the value of the property is less than the total of the liens secured by it—but accepting the Debtor's value as correct, there would appear to be value available for junior lien holders.

On January 16, 2009, the Debtor moved to expunge Countrywide's proof of claim on the grounds that the debtor abandoned the property and so the claim is not secured. (ECF Doc. #11.) On February 5, 2009, the Debtor and Countrywide resolved the matter by entering into a stipulation modifying the automatic stay to permit Countrywide to continue a foreclosure action on the Homer Drive property. (ECF Doc. #17.) The Stipulation also provided that Countrywide would withdraw its secured proof of claim and the Debtor would withdraw her motion to expunge. The Court has been advised that the Homer Drive property has not yet been sold at a foreclosure sale; Debtor's counsel does not expect it to be sold for at least another 90 days. If the property sells for an amount in excess of the Countrywide first mortgage debt, UMLI will recover a portion of its secured claim, but is likely to be left with a substantial deficiency.

The Debtor subsequently filed an objection to UMLI's secured claim on the grounds that the "debtor has abandoned the property and therefore the claim is not secured."[4] (ECF Doc. #29 ¶ 6.) Debtor's counsel's affirmation attached to the amended notice of motion, filed on April 28, 2009 (ECF Doc. #29), states that the Debtor's amended plan provides that the Debtor "surrendered 10 Homer Drive, Brewster, New

---

[4] No evidence or legal argument was presented to establish abandonment or its consequences. Since Debtor's Schedule A lists the property, it is clearly property of the estate. Bankruptcy Code § 554(a) and FED. R. BANKR. P. 6007(a) apply to abandonment of property of the estate and require notice and hearing. The procedure was not followed here. As a result, the Homer Drive property has not been abandoned. Of course, if Debtor's objection is taken at face value, and UMLI has no secured claim, UMLI would then have an entirely unsecured deficiency claim. But the property has not been abandoned and, if Debtor's schedules are correct, UMLI's claim is partially secured and partially unsecured.

5

York, pursuant to 11 U.S.C. § 1325(a)(5)(C), the property securing said claim." (*Id.* ¶ 4.) Debtor's amended plan, which has since been amended twice (ECF Docs. #31, 33), provides for surrender of the property, but like the earlier amended plan, it does not state that surrender is in full satisfaction. Debtor's motion seeks to disallow UMLI's claim in its entirety. The Court held a hearing on May 21, 2009, and took the matter under submission.

## DISCUSSION

### A.  Surrender Under § 1325(a)(5)(C)

Section 502(a) governs the allowance of claims and provides that a claim is allowable unless a party in interest objects. 11 U.S.C. § 502(a). Under § 506(a), a secured creditor's claim is only secured up to the value of the collateral; beyond that amount, the claim is unsecured. 11 U.S.C. § 506(a); Sen. Rep. No. 95-989, 95th Cong., 2d Sess. 68 (1978); H.R. No. 95-595, 95th Cong., 1st Sess. 356 (1977) (Section 506(a) "separates an undersecured creditor's claim into two parts: He has a secured claim to the extent of the value of his collateral; and he has an unsecured claim for the balance of his claim."). The Second Circuit has described the procedure as follows: "When the debtor elects to surrender the collateral under [§ 1325(a)(5)(C)], the secured creditor takes possession of the property and sells it in accordance with non-bankruptcy law. If a sale produces a deficiency, the creditor may assert the amount of such deficiency as an unsecured claim against the debtor's remaining assets." *First Brandon Nat'l Bank v. Kerwin (In re Kerwin)*, 996 F.2d 552, 557 (2d Cir. 1993).[5] Therefore, absent creditor consent, a debtor surrendering collateral under § 1325(a)(5)(C) may not do so in full

---

[5]   *Kerwin* involved a chapter 12 farm case and the Second Circuit analyzed § 1225(a)(5)(C). The language of that section is identical to the language in § 1325(a)(5)(C).

6

satisfaction of the loan, because the secured creditor would be entitled to an unsecured deficiency claim for any shortfall.[6]

This was also the result in *In re Hughes*, 402 B.R. 404 (Bankr. M.D. Fla. 2008). *Hughes* involved an objection to confirmation by a secured creditor, rather than a debtor's objection to the claim as in this case.[7] The bankruptcy court dealt with the issue whether a debtor may surrender collateral under § 1325(a)(5)(C) in full satisfaction of the claim. The debtor owned property in Florida secured by two mortgages. The value of the property was less than the mortgage debt. The debtor proposed to surrender the property in full satisfaction. Wachovia—the holder of the second mortgage—objected to confirmation of the plan. The court, citing *Kerwin*, noted that Wachovia's claim would be divided into secured and unsecured claims pursuant to § 506(a). Therefore, "Wachovia, to the extent its claim is undersecured, is entitled to file a general unsecured deficiency claim pursuant to 11 U.S.C. § 506(a). Such deficiency claim would share pro

---

[6] Where a debtor's plan expressly provides for surrender in full satisfaction of the creditor's claim, and sufficient notice has been given to the secured creditor of the proposed plan treatment, the failure of the secured creditor to object to confirmation may be found to be consent to surrender in full satisfaction. *See, e.g.*, *In re Basham*, 167 B.R. 903, 907−08 (Bankr. W.D. Mo. 1994) (holding that confirmation of a chapter 13 plan that provided for surrender in full satisfaction precluded a secured creditor's post-foreclosure deficiency claim, because the secured creditor had notice of the plan and did not object). There is a split among the circuits, with no controlling Second Circuit law, about the circumstances in which a secured creditor's consent to plan treatment arises from a failure to object to plan confirmation. *See Flynn v. Bankowski (In re Flynn)*, 402 B.R. 437, 444 (1st Cir. BAP 2009) (recognizing split and adopting Third Circuit view that "acceptance may occur upon a secured creditor's failure to file a timely objection to a chapter 13 plan") (citing *In re Szostak*, 886 F.2d 1405, 1414 (3d Cir. 1989)).

[7] While the failure to object to confirmation may constitute the creditor's consent to the treatment provided in the plan, the failure of a creditor to respond to a motion to expunge a claim does not automatically result in granting a motion to disallow the claim. A proof of claim that satisfies the requirements of FED. R. BANKR. P. 3001 is *prima facie* evidence of the validity and amount of the claim. A motion to expunge the claim will only be granted if the objection is legally and factually sound. Too often the Court is faced with boilerplate motions to expunge claims, without proper legal or factual support, in the hope that the creditor will not incur the time or expense of responding to the claim objection. That is particularly true where the claims involve small dollar amounts. Here, of course, the potential deficiency claim is large, and a creditor that fails to respond to the objection runs the risk of having its claim expunged.

7

rata in any distributions to other unsecured creditors." *Id.* at 407. The court therefore sustained Wachovia's objection, and gave Wachovia 60 days to file a claim for any unsecured deficiency, and gave the debtor 14 days to file an objection to Wachovia's deficiency claim. *Id.* at 407.

Under § 506(a), determining the value of the secured and unsecured portions of the claim is context sensitive: "Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property . . . ." 11 U.S.C. § 506(a); *see also* 4 COLLIER ON BANKRUPTCY ¶ 506.03[4][b] (15th rev. ed. 2007). As the Supreme Court made clear in *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 962 (1997), "surrender and retention are not equivalent acts." In *Rash*, where the chapter 13 debtor proposed to retain collateral securing a debt and to cram down the secured claim under § 1325(a)(5)(B), replacement value rather than foreclosure value was the appropriate valuation standard to be applied in valuing the secured and unsecured portions of the claim. *Id.* at 962–63. Where surrender is proposed under § 1325(a)(5)(C), and the collateral is valued under § 506(a) or the unsecured deficiency claim is being estimated for allowance under § 502(c)(1) because awaiting fixing of the claim would unduly delay administration of the case, a foreclosure valuation would appear to be the most appropriate methodology to use.

In this case, the automatic stay has been modified by stipulation to permit the first mortgagee, Countrywide, to continue its foreclosure action.[8] It will apparently take

---

[8] A senior mortgagee will ordinarily be unwilling to accept a deed in lieu of foreclosure if the property is encumbered by junior liens. Only through foreclosure can the senior lien holder strip the property of junior liens. *See, e.g.*, *Gilbert v. Dean*, 496 N.Y.S.2d 101, 103 (3d Dep't 1985) (holding that junior mortgage was extinguished because of foreclosure on first mortgage); *Sautter v. Frick*, 242 N.Y.S. 369, 371-72 (4th Dep't 1930) ("The title acquired by the purchaser [at foreclosure] from the time of the receipt by him of the conveyance is free from the lien of the mortgage upon which the suit was based, and of subsequent liens held by parties to the action.").

8

another 90 days before the foreclosure sale takes place.  Even though the Debtor intends to surrender the property as part of her plan, until the property is actually sold pursuant to a foreclosure sale, title to the property remains vested in the Debtor.  *See Rodgers v. County of Monroe (In re Rodgers)*, 333 F.3d 64, 68 (2d Cir. 2003) (holding that owner has lost legal and equitable interest in real property after a foreclosure sale even if formal transfer of title has not taken place); *In re Dominguez*, 312 B.R. 499, 504 (Bankr. S.D.N.Y. 2004); l79 N.Y. JUR. 2d *Mortgages*, § 767 (2d ed. 2009) ("In general, title to the mortgaged premises passes to the purchaser at the foreclosure sale at the moment of delivery of the deed executed by the officer appointed to conduct the sale.").  And UMLI continues to have a secured claim against the Debtor.  While it may well be that UMLI is undersecured, a fact that still remains to be established, the Debtor's motion to expunge proof of claim #7 must be denied.  The issue remains how any unsecured deficiency should be dealt with in this case.

Where the chapter 13 plan calls for surrender under § 1325(a)(5)(C), the debtor must obtain the consent of the secured creditors for surrender in full satisfaction or provide for any unsecured deficiency in the plan.  *See In re Toth*, 61 B.R. 160, 170 (Bankr. N.D. Ill. 1986) ("To meet the requirements of § 1325(a)(5)(C) and effect a permissible surrender of property, the debtor's Plan must provide for the unsecured portion of the secured creditor's claim."); *In re Stockwell*, 33 B.R. 303, 305 (Bankr. D. Or. 1983) ("Subsection (C) is clear.  If the debtor surrenders his interest in the property securing the claim, the court can find that the requirements of § 1325(a)(5) have been met.  The creditor may then foreclose his lien and file an unsecured claim for his actual or expected deficiency."); *In re Erwin*, 25 B.R. 363, 367 (Bankr. D. Minn. 1982)

("Consequently, if the disposition of this property results in a sale for an amount that is less than the claim, the debtor must provide for the unsecured portion in the plan and that has not been done here."). Otherwise the plan is not confirmable.

### B.  Section 506(a)'s Impact on the Administration of Chapter 13 Plans

Denial of the motion to expunge the secured claim leaves the Debtor, creditors, and the Court with a conundrum. Because of the collapse of the real estate market, chapter 13 debtors are increasingly proposing as part of chapter 13 plans to surrender property with mortgage debt or liens exceeding the value of the property. Even though secured creditors need not file proofs of claim for their liens to ride-through a chapter 13 debtor's bankruptcy,[9] the only way for the creditor to recover money under a plan in the event an underwater debtor surrenders the property is to file a claim. But as surrender usually does not occur until after confirmation, and foreclosure does not occur until sometime later, the amount of the deficiency is unknown until well after the bar date or confirmation.[10] Because of the large backlog of homes in foreclosure, it may take 6 to 12 months after surrender of the property for a foreclosure sale to be completed and the

---

[9] *See, e.g.*, *In re Jiminez*, 2008 WL 2026147, at *4 (Bankr. S.D.N.Y. May 9, 2008) ("Since a 'lien' is a 'claim' in a chapter 13 case, whether a secured creditor's lien rights survive confirmation depends upon whether the chapter 13 plan provides for the lien."); *In re Dennis*, 230 B.R. 244, 252 (Bankr. D.N.J. 1999) (holding that if chapter 13 plan does not treat secured claim, "the lien will pass through bankruptcy unaffected").

[10] A debtor who proposes surrender of property as part of plan can also agree early in the case to lift the automatic stay to permit foreclosure, allowing the fixing of a deficiency claim sooner rather than later. A secured creditor can also file two proofs of claim (or a single bifurcated proof of claim)—one for the secured claim, and one for an unliquidated unsecured deficiency claim. As another court recognized, "[a]s a general proposition, the prudent approach for a secured creditor who is uncertain of a deficiency should file a bifurcated claim composed of a secured and unsecured portion, or, in the alternative, the creditor should file a motion to value the collateral and obtain an order determining the amount of deficiency based on Section 506(a) of the Code." *In re Brooks*, 2009 WL 1490486, at *3 (Bankr. M.D. Fla. Apr. 23, 2009) (Paskay, J.). Prior to foreclosure the problem remains in fixing the amount of the deficiency, but at least the secured creditor avoids the risk of having a motion to file an amended claim denied.

10

amount of the deficiency claim to be liquidated.[11] The result creates an administrative bind. On the one hand, a secured creditor that only filed a secured proof of claim may not know the amount of the deficiency for months after a plan would ordinarily be confirmed; on the other hand, a long delay in fixing the amount of any deficiency claim may block confirmation in the case of a 100% plan, or impede the administration of the case even after confirmation in the case of some *pro rata* plans.[12]

The Code provides two methods for fixing unsecured deficiency claims in a timely fashion: (1) a party in interest may file a motion to determine the value of a claim secured by a lien under § 506(a) and FED. R. BANKR. P. 3012; or (2) the Court can estimate the unsecured deficiency claim for purpose of allowance under § 502(c)(1). *See Sentinel Fed. Credit Union v. United States (In re Tunnissen)*, 216 B.R. 834, 838 (Bankr. D.S.D. 1996) ("Sections 502(c)(1) and 506(a) contemplate such estimated, tailored-to-the-purpose valuations so that the administration of the case will not be delayed."). Either method would work in this instance, if the parties cannot resolve the dispute consensually.

UMLI could have (and probably should have) filed an unsecured deficiency claim earlier. Because the bar date has passed, granting a motion to amend a claim is subject to

---

[11] A court once stated that "[i]n most cases it would not be necessary for the court to determine the amount of the allowed unsecured claim until the creditor had completed foreclosure of the lien." *In re Stockwell*, 33 B.R. 303, 305 (Bankr. D. Or. 1983). As noted above, awaiting completion of state foreclosure proceedings in current market conditions is problematic.

[12] In this case, feasibility cannot be determined until the amount of the unsecured deficiency claim is fixed. If a debtor's plan is a *pro rata* plan, paying all unsecured creditors their *pro rata* share of plan payments available for unsecured creditors over the life of the plan, feasibility of the proposed plan may not be an issue. A plan can be confirmed before the allowed amounts of all unsecured claims are resolved. Since secured and priority claims will have to be paid in full before unsecured creditors receive any distribution, awaiting the outcome of foreclosure proceedings to fix the amount of unsecured deficiency claims may not impede the administration of the plan. If, however, the deficiency will be large and the priority claims small, the chapter 13 trustee may not be able to commence distributions until the deficiency claim is fixed.

11

the discretion of the court. *In re McLean Indus., Inc.*, 121 B.R. 704, 708 (Bankr. S.D.N.Y. 1990) ("It is well-settled that the decision to permit an amendment of a proof of claim rests within the sound discretion of the bankruptcy judge."). "Post-bar date amendments should be scrutinized to ensure that the amendment is not making a new claim against the estate." *In re Clamp-All Corp.*, 235 B.R. 137, 140 (1st Cir. BAP 1999). In this jurisdiction, courts follow a two-prong test to assess motions to amend proofs of claim. First, a court must determine whether there was a "timely assertion of a similar claim or demand evidencing an intention to hold the estate liable." *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 95 (Bankr. S.D.N.Y. 2007). "If the first prong is satisfied, the court must then determine whether it would be equitable to allow the amendment." *Id*. at 95. UMLI filed a timely secured proof of claim, evidencing its intent to hold the Debtor liable for the full amount of the second mortgage debt. But absent an agreement as to the amount of the deficiency claim, an amended claim at this stage of the case would still leave the amount of the deficiency unliquidated. Unless a foreclosure sale occurs soon, a hearing under §§ 502(c)(1) or 506(a) to value an unliquidated deficiency claim would still be required before confirmation. The failure of a secured creditor to file an amended proof of claim for the deficiency, or obtain a valuation of the claim under §§ 502(c)(1) or 506(a), may result in forfeiture of the deficiency claim. *See In re Harrison*, 987 F.2d 677, 681 (10th Cir. 1993) (holding that secured creditor forfeited right to deficiency claim where it did not move to value its security interest or move to amend its secured proof of claim).

A motion to value the lien under § 506(a) and FED. R. BANKR. P. 3012 would trigger a contested matter. 9 COLLIER ON BANKRUPTCY ¶ 3012.01 (15th rev. ed. 2007)

12

("A motion under Rule 3012 commences a contested matter.") (citing FED. R. BANKR. P. 9014). In such a proceeding, UMLI bears the burden of proof with respect to the amount and extent of its lien under § 506(a). *See, e.g., In re Hampel*, 2000 WL 34441712, at *2 (Bankr. D. Kan. 2000) ("As numerous courts have held, . . . the ultimate burden of persuasion falls upon the claimant to demonstrate by a preponderance of the evidence both the extent of its lien and the value of its collateral."); *In re Fassinger*, 246 B.R. 513, 520 (Bankr. W.D. Pa. 2000) (holding that under § 506, "the ultimate burden of persuasion is upon the creditor to demonstrate by a preponderance of the evidence both the extent of its lien and the value") (quoting *In re Robertson*, 135 B.R. 350, 352 (Bankr. E.D. Ark. 1992)); *In re Buick*, 126 B.R. 840, 851 (Bankr. E.D. Pa. 1991) ("Throughout the Code, the burden of proving the 'validity, priority, and extent' of security interests lies upon the creditors asserting such interests."). Whatever the Court determines the value of the lien to be, the excess would be the unsecured deficiency. This was the procedure followed in *In re Brooks*, 2009 WL 1490486, at *3−5 (Bankr. M.D. Fla. Apr. 23, 2009), where, in considering the debtor's objections to two secured claims and the mortgagee's motion to determine the value of the collateral under § 506(a), the court overruled the debtor's objections and held that the mortgagee was entitled to unsecured deficiency claims where it had timely filed secured proofs of claim. The court then determined the amounts of the creditor's secured and unsecured claims pursuant to § 506(a).

In the alternative, the Court could hold an estimation hearing under § 502(c)(1) to determine the value of the unliquidated unsecured deficiency claim so that it can assess the feasibility of the plan. 3 NORTON BANKR. L. & PRAC. § 48:11 (3d ed. 2009) ("It may

13

also be appropriate to estimate large contingent or unliquidated claims in order for a court to rule on the feasibility of a Chapter 13 plan."). Under § 502(c)(1), the court may estimate for purposes of allowance "any contingent or unliquidated claim, the fixing or liquidation of which . . . would unduly delay the administration of the case." 11 U.S.C. § 502(c)(1). "The essence of § 502(c) is that all claims against the debtor be converted into dollar amounts." 4 COLLIER ON BANKRUPTCY ¶ 502.04[1] (15th rev. ed. 2007) (citing H.R. Rep. 595, 95th Congr., 1st Sess. 354 (1977)). An estimation hearing is required if waiting for liquidation would unduly delay administration of the case. *Id.* ¶ 502.04[2].

## CONCLUSION

Current economic and market conditions have increasingly led chapter 13 debtors to propose surrender of property pursuant to § 1325(a)(5)(C), leaving secured lenders with unsecured deficiency claims. Unless foreclosures can be completed quickly (generally not realistic at the present time), the amount of the deficiency claims cannot be easily resolved. The best solution is for debtors, secured creditors, and the chapter 13 trustee to resolve secured creditors' deficiency claims by agreement. Debtors cannot ignore providing for treatment of such deficiency claims in their chapter 13 plans, particularly if determining plan feasibility requires it. Sections 502(c) and 506(a) provide procedures for determining the amount of a deficiency claim without waiting for a foreclosure sale. Unless the Homer Drive property is sold in the manner provided by state law in a reasonable period of time, confirmation of this case will be unreasonably delayed.

Almost a year after the Debtor's chapter 13 petition was filed, UMLI's unsecured deficiency remains an unresolved contingency that prevents a determination of the

14

feasibility of Debtor's proposed plan.  It is unfair to all parties in interest for this uncertainty to remain, delaying the prompt administration of this case.  If the parties cannot consensually resolve the amount of the deficiency claim within 30 days, the Court will hold a hearing to determine the procedures that shall be applied to resolve the dispute.  For the reasons explained above, the Debtor's motion to expunge proof of claim #7 is DENIED.  The parties shall appear at the regularly scheduled chapter 13 hearing on August 6, 2009.

**IT IS SO ORDERED.**

Dated: New York, New York
          July 2, 2009

                                        _____/s/Martin Glenn_____
                                             MARTIN GLENN
                                        United States Bankruptcy Judge